# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHANNON ANSPACH, | No. 4:18-CV-01916 |
| Plaintiff, | (Judge Brann) |
| v. | |
| EVANGELICAL COMMUNITY HOSPITAL, | |
| Defendant. | |

## MEMORANDUM OPINION

## JULY 16, 2021

### I. BACKGROUND

Plaintiff Shannon Aspach sued Evangelical Community Hospital ("ECH") based on multiple employment discrimination laws. Some of her claims were dismissed earlier in the litigation, and now that discovery has concluded, ECH has moved for summary judgment on the remaining claims. The motion is now ripe for disposition; for the reasons below, it is granted.

### II. DISCUSSION

#### A. Standard of Review

I begin my analysis with the standard of review undergirding summary judgment. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and we think it

should be interpreted in a way that allows it to accomplish this purpose."[1]

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

"Facts that could alter the outcome are 'material facts,' and disputes are 'genuine' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct."[3] "A defendant meets this standard when there is an absence of evidence that rationally supports the plaintiff's case."[4] "A plaintiff, on the other hand, must point to admissible evidence that would be sufficient to show all elements of a *prima facie* case under applicable substantive law."[5]

"The inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits."[6] Thus, "if the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-

---

[1] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).
[2] Fed. R. Civ. P. 56(a).
[3] *Clark v. Modern Grp. Ltd.*, 9 F.3d 321, 326 (3d Cir. 1993) (Hutchinson, J.) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) and *Celotex*, 477 U.S. at 322).
[4] *Clark*, 9 F.3d at 326.
[5] *Id.*
[6] *Liberty Lobby, Inc.*, 477 U.S. at 252.

minded jury could return a verdict for the plaintiff on the evidence presented."[7] "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[8] "The judge's inquiry, therefore, unavoidably asks . . . 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'"[9] The evidentiary record at trial, by rule, will normally never surpass what was compiled during discovery.

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."[10] "Regardless of whether the moving party accompanies its summary judgment motion with affidavits, the motion may, and should, be granted so long as whatever is before the district court demonstrates that the standard for the entry of summary judgment, as set forth in Rule 56(c), is satisfied."[11]

---

[7] *Id.*
[8] *Id.*
[9] *Id.* (quoting *Schuylkill & Dauphin Imp. Co. v. Munson*, 81 U.S. 442, 447 (1871)).
[10] *Celotex*, 477 U.S. at 323 (internal quotations omitted).
[11] *Id.*

When the movant properly supports his motion, the nonmoving party, to avoid summary judgment, must answer by setting forth "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."[12] For movants and nonmovants alike, the assertion "that a fact cannot be or is genuinely disputed" must be supported by: (i) "citing to particular parts of materials in the record" that go beyond "mere allegations"; (ii) "showing that the materials cited do not establish the absence or presence of a genuine dispute"; or (iii) "showing . . . that an adverse party cannot produce admissible evidence to support the fact."[13]

"When opposing summary judgment, the non-movant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'"[14] Moreover, "if a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion."[15] On a motion for summary judgment, "the court need consider only the cited materials, but it may consider other materials in the record."[16]

---

[12] *Liberty Lobby*, 477 U.S. at 250.
[13] Fed. R. Civ. P. 56(c)(1).
[14] *Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co.*, 311 F.3d 226, 233 (3d Cir. 2003) (Weis, J.).
[15] Fed. R. Civ. P. 56(e)(2).
[16] Fed. R. Civ. P. 56(c)(3).

Finally, "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."[17] "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[18] "If the evidence is merely colorable . . . or is not significantly probative, summary judgment may be granted."[19]

## B. Undisputed Facts

Before proceeding to the undisputed facts which now constitute the essence of this matter, the Court notes that this motion poses unusual hurdles for Anspach. While ECH, the moving party, included the required "separate, short and concise statement of the material facts, in numbered paragraphs, as to which [it] contends there is no genuine issue to be tried," Anspach failed to fulfill her own responsibilities in responding to that statement.[20] The Middle District of Pennsylvania's Local Rules are clear that the party opposing summary judgment "shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required [by the moving party], as to which it is contended that there exists a genuine issue to be tried."[21]

---

[17] *Liberty Lobby*, 477 U.S. at 249.
[18] *Id*.
[19] *Id*. at 249–50 (internal citations omitted).
[20] M.D. Pa. Local Rule 56.1.
[21] *Id*.

It is also worth mentioning again that any such statements of material fact must "include references to the parts of the record that support the statements."[22] While ECH's statement of facts complies with this requirement, Anspach's non-existent statement does not. Finally, according to this Court's rules, all "material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party."[23]

When a party disregards Local Rule 56.1, a "District Court's decision to employ any given sanction . . . is fully within the discretion of that Court."[24] This includes striking entire paragraphs and deeming facts as admitted. Judges in the Middle District of Pennsylvania have regularly treated a moving party's statement of facts as admitted for failure to comply with the Local Rules.[25] They have also stricken non-compliant statements of facts.

The most Anspach does is allege facts sporadically throughout her brief. But this does not satisfy Local Rule 56.1 or Federal Rule of Civil Procedure 56.

---

[22] *Id*.
[23] *Id*.
[24] *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613-14 (3d Cir. 2018) (affirming lower court's grant of summary judgment after that court deemed moving party's facts admitted because nonmoving party ignored Local Rule 56.1).
[25] *See Rossi v. Progressive Ins.*, 813 F. Supp. 2d 643, 645 (M.D. Pa. 2011); *see also Landmesser v. Hazelton Area Sch. Dist.*, 982 F. Supp. 2d 408, 413 (M.D. Pa. 2013); *and Giovanetti v. Dep't of Corrections*, 2020 WL 4924545, at *1 (M.D. Pa. Aug. 21, 2020) ("In this case, Defendants filed a statement of material facts as required by Local Rule 56.1, see Doc. 25, but [Plaintiff] did not file a response. Accordingly, the facts in Defendants' statement of material facts are deemed admitted.").

Her brief has a grand total of *zero* citations to the record.[26] On a motion for summary judgment, Anspach cannot create issues of material fact by simply making allegations without record evidence. The result of these shortcomings is that ECH's material facts are deemed admitted and therefore undisputed. And with no disputed facts, Anspach cannot prevent summary judgment if ECH shows an entitlement to it.

Having established the potential consequences of Anspach's failure to submit a statement of facts in opposition to summary judgment, I now turn to the undisputed facts of the matter, as set forth by ECH.

Anspach, a Jehovah's Witness, was hired by ECH as an Emergency Medical Technician ("EMT") in 2004.[27] She worked for ECH until her termination in January 2017.[28] As an EMT, part of her job involved following ECH's policies, such as those in the Employee Handbook she received at the beginning of her tenure with ECH.[29] She was also required to keep a valid Pennsylvania driver's license, and ECH would periodically check to ensure she did that.[30]

In July 2016, Anspach was supposed to give ECH an updated copy of her driver's license. She failed to do so despite receiving multiple notices that her

---

[26] This failure is particularly glaring because Anspach asked for, and received, an extension of her deadline to oppose summary judgment. *See* Doc. 59.
[27] Doc. 57 ¶¶ 1, 3.
[28] *Id.* ¶ 65.
[29] *Id.* ¶¶ 5, 6.
[30] *Id.* ¶ 7.

driver's license was about to expire.[31] She admitted this fact to her supervisor and the Director of Human resources in August 2016.[32]

Anspach also received verbal warnings for other behavior. For example, she solicited furniture donations for the Milton Fire Department without permission, and when she was confronted about her actions, became agitated to the point where a Milton Fire Department representative asked that Anspach be prohibited from working at the department.[33] Additionally, some of Anspach's colleagues contacted one of Anspach's supervisors and described Anspach as angry, unhappy, and/or abusive.[34] Later in August, Anspach violated ECH's dress code and was asked to remove a headband with rhinestones on it.[35]

Admittedly, Anspach had a few run-ins with coworkers who were, shall we say, less than accepting of her religious beliefs. For example, another employee approached her once in 2011 and said: "I hate you. Jehovah's Witnesses and Amish kill their children."[36] Five years later, in October 2016, Anspach went to a training on dealing with patients who refuse treatment from EMTs. During that training, one of her supervisors commented that if a parent of an injured child refused to let the child be transported by an EMT who happened to be a Jehovah's

---

[31] *Id.* ¶¶ 8, 9.
[32] *Id.* ¶ 10.
[33] *Id.* ¶ 12.
[34] *Id.* ¶¶ 13, 14.
[35] *Id.* ¶ 15. Although Anspach claimed that other employees were not disciplined for dress code violations, they were. *Id.* ¶¶ 16, 17.
[36] *Id.* ¶ 18. This exchange was clearly unacceptable.

Witness, those on-scene should call Medical Command for direction.[37] After Anspach reported this statement, ECH conducted an investigation, and this supervisor apologized and told Anspach that he did not know she was a Jehovah's Witness when he made that comment.[38]

Eventually, on December 27, 2016, Anspach and her paramedic partner were dispatched to help a man reported to have a foreign object in his rectum.[39] That object turned out to be an 8-inch ratcheting screwdriver lodged in the man's anal canal.[40] Perhaps distraught at the idea of leaving this large screwdriver where it was for any longer than necessary, the man refused to be transported to the hospital and demanded that the EMTs remove the screwdriver in the ambulance.[41] With very few exceptions, when a patient refuses to be transported to a hospital, EMTs are required to consult with Medical Command before proceeding.[42] Anspach and her partner failed to do this and instead simply removed the object from the patient.[43]

When the patient's chart was reviewed, it was forwarded to higher-ups for further consideration.[44] After that, an investigation was conducted to determine

---

[37] Id. ¶ 22.
[38] Id. ¶¶ 23-25.
[39] Id. ¶ 35.
[40] Id. ¶ 37.
[41] Id. ¶¶ 38, 39.
[42] Id. ¶¶ 40-42.
[43] Id. ¶ 43.
[44] Id. ¶¶ 44, 45.

whether Anspach and her partner violated protocols, and Anspach was placed on administrative leave pending investigation.[45] Anspach was interviewed as part of the investigation and acknowledged it "would have been smart to call Medical Command before the object was removed."[46] Interviews were also conducted with other EMTs and physicians, who testified that it is common knowledge that objects should rarely be removed from a patient's body at the scene.[47] For example, Richard Gibbons, the Director of the Bureau of EMS at the Pennsylvania Department of Health, stated that the decision to remove the screwdriver at the scene showed a "tremendous lack of critical thinking," and violated protocol.[48] The investigation concluded that Anspach and her partner violated the Pennsylvania Impaled Object Basic Life Support ("BLS") Protocol, as well as the Pennsylvania Medical Command Contact Statewide BLS Protocol.[49] Anspach had been trained on both protocols.[50] As a result of the investigation and its findings, Anspach was terminated on January 20, 2017.[51]

### C. Analysis

Anspach's claims of religious discrimination and retaliation survived the motion to dismiss and are the subject of this motion for summary judgment. Title

---

[45] *Id.* ¶ 46, 47.
[46] *Id.* ¶¶ 48, 49.
[47] *Id.* ¶¶ 52, 53.
[48] *Id.* ¶¶ 54, 55.
[49] *Id.* ¶¶ 57, 58.
[50] *Id.* ¶ 61.
[51] *Id.* ¶ 65.

VII and the PHRA prohibit both discrimination in employment based on religion and retaliation for taking protected actions.[52] These cases are evaluated under the burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*.[53] At the first stage, a plaintiff must establish the prima facie case of discrimination or retaliation. If a plaintiff meets that burden, the defendant must produce a legitimate, nondiscriminatory explanation for the adverse action.[54]

If the defendant employer does so, the burden shifts back to the plaintiff to provide evidence that reveals the employer's explanation is merely pretext for discrimination. A plaintiff normally does this by submitting evidence that "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication; or 2) allows the factfinder to infer that discrimination was more likely than not a motivating or determinative cause of the adverse employment action."[55]

### 1. Discrimination and Retaliation – the Prima Facie Case

To establish discrimination, Anspach must show that she: (1) is a member of a protected class; (2) was qualified for the position she held; (3) suffered an adverse employment action; and (4) the circumstances of that adverse employment

---

[52] The analysis of the PHRA claims is identical to the Title VII analysis. *See Atkinson v. LaFayette Coll.*, 460 F.3d 447, 454 n. 6 (3d Cir. 2006) ("Claims under the PHRA are interpreted coextensively with Title VII claims.").
[53] 411 U.S. 792, 802-804 (1973).
[54] *James v. Tri-Way Metalworkers, Inc.*, 189 F. Supp. 3d 422, 434 (M.D. Pa. 2016).
[55] *Fuentes v. Perskie*, 32 F.3d 759, 762 (3d Cir. 1994).

action give rise to an inference of discrimination, or individuals outside the protected group were treated more favorably.[56]

Anspach also claims that she was retaliated against in violation of Title VII and the PHRA. A "prima facie case of illegal retaliation requires a showing of (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action."[57] On this motion for summary judgment, ECH has chosen not to dispute the first two elements of the retaliation claim.[58] "To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."[59]

Plaintiff has provided no evidence in this matter, and so she cannot establish her prima facie case of discrimination in the first instance. She cannot show that the circumstances of her termination give rise to an inference of discrimination. Anspach's brief in opposition to summary judgment baldly asserts that the "record

---

[56] *See James v. Tri-Way Metalworkers, Inc.*, 189 F. Supp. 3d 422, 434 (M.D. Pa. 2016) (citing *Johnson v. Keebler–Sunshine Biscuits, Inc.*, 214 Fed. Appx. 239, 241 (3d Cir. 2007).
[57] *E.E.O.C. v. Allstate Ins. Co.*, 778 F.3d 444, 449 (3d Cir. 2015) (Hardiman, J.) (internal quotation marks omitted).
[58] Doc. 56 at 17 n.5.
[59] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

evidence presented" shows that non-Jehovah's Witnesses were treated better than she was, and that an inference of discrimination is present.[60] It is unclear what evidence she is talking about, because there are no citations to anything in the record.

Even putting aside Anspach's failure to submit a statement of facts, the brief fails to clarify her argument. The undisputed facts reveal just two incidents where anybody said anything about Jehovah's Witnesses, and these events took place five years apart. The second one also took place several months before she was fired. These are stray remarks that do not support an inference of discrimination.[61] The Third Circuit has noted that while such comments are not irrelevant, "stray remarks, standing alone, may not give rise to an inference of discrimination."[62] This is particularly true given the time between those two comments and Anspach's termination.

The prima facie case for retaliation fares no better, because Anspach cannot establish a causal connection. First, she acknowledges in briefing that "the chasm in time between [her] protected activity . . . and the adverse employment action was several months, which standing alone would not support a claim for retaliation

---

[60] Doc. 60 at 5-6.
[61] As ECH notes, neither of the coworkers who made those remarks were involved in the decision to fire Anspach. *See* Doc. 61 at 7.
[62] *Doe v. C.A.R.S. Protection Plus, Inc.*, 527 F.3d 358, 368 (3d Cir. 2008) (quoting *Fisher v. Pharmacia & Upjohn*, 225 F.3d 915, 922 (8th Cir. 2000)).

. . ."⁶³ The problem is that she has no evidence to fill that chasm and form the necessary causal connection. Again, her failure to support her allegation of "additional, consistent, and repeated retaliatory conduct" by ECH dooms her claim.⁶⁴

### 2. The Non-discriminatory Rationale

Even assuming Anspach met her burden to establish a prima facie case, ECH has set forth evidence supporting a legitimate, nondiscriminatory reason for firing Anspach. As outlined above, Anspach violated multiple protocols on December 27, 2016. Anspach did not dispute that she broke those rules. Her actions would support ECH's decision to fire her. The burden now shifts back to Anspach.

### 3. Pretext

For largely the same reasons she fails to establish the prima facie case, Anspach cannot show that ECH's proffered reason is pretextual. She claims that she "has provided circumstantial behavior of consistent discriminatory and retaliatory behavior" by ECH . . . but she simply has not.⁶⁵ For example, Anspach claims that she was held to "more strict and demanding" responsibilities, that she was "denied salary increases," and "antagonized."⁶⁶ These allegations fail for two main reasons: (1) they are vague, devoid of any specificity; and (2) there are no

---

⁶³ Doc. 60 at 7.
⁶⁴ *Id.* at 7-8.
⁶⁵ *Id.* at 10
⁶⁶ *Id.* at 8.

citations to the record that back up these arguments. Again, unsupported allegations are not evidence. Sentences in a brief submitted by counsel are not evidence.[67] Anspach has provided no *evidence* that casts doubt on ECH's explanation for firing her, or any reason to infer that discrimination was even a motivating factor in letting her go. And without evidence, there is not enough to survive summary judgment.

## III. CONCLUSION

At bottom, ECH has demonstrated that summary judgment is appropriate based on the evidence in the record. On the other hand, Anspach has failed to support her allegations with any evidence, and so her claims cannot proceed. Summary judgment is granted as to Counts 5 and 6. An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[67] *See, e.g.*, *Nothstein v. USA Cycling*, 499 F. Supp. 3d 101, 115 (E.D. Pa. 2020) ("Moreover, arguments made in briefs 'are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion.'") (quoting *Jersey Cent. Power & Light Co. v. Twp. of Lacey*, 772 F.2d 1103, 1109–10 (3d Cir. 1985)).